796 P.2d 614

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Roy PEPPERS, Defendant–Appellant.**

**No. 11362.**

Court of Appeals of New Mexico.

May 3, 1990.

Certiorari Denied June 19, 1990.

Jacquelyn Robins, Chief Public Defender and Jonathan A. Abbott, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen. and Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

HARTZ, Judge.

Defendant pleaded no contest to a charge of failure to appear for sentencing on a conviction of vehicular homicide. Because he had three prior felony convictions, defendant's sentence for failure to appear was enhanced by eight years pursuant to the provisions of the habitual-offender statute, NMSA 1978, Section 31–18–17 (Repl. Pamp.1987). Defendant's conviction for vehicular homicide was among the prior convictions used to establish defendant's status as a habitual offender. Shortly after sentencing, defendant moved to withdraw his plea. Defendant raises three issues on appeal: (1) whether the district court properly denied his motion to withdraw his plea; (2) whether the failure-to-appear statute, NMSA 1978, Section 31–3–9 (Repl.Pamp.1984), applies to failure to appear for sentencing; and (3) whether the vehicular-homicide conviction could be used to enhance his sentence. In addition, defendant's appeal presents questions concerning procedural matters that affect the jurisdiction of this court and the scope of our review. We affirm.

I. BACKGROUND

On October 24, 1988, defendant pleaded no contest to the charge of failure to appear on June 20, 1988, for sentencing on his conviction of the offense of vehicular homicide. The following day the state filed a supplemental criminal information alleging that defendant was a habitual criminal offender. One count of the information alleged defendant's conviction on May 2, 1988, of the crime of vehicular homicide. On October 26, 1988, defendant admitted to being a habitual offender with at least three prior felony convictions, as charged in the supplemental information. On November 1, the district court filed the judgment, sentence, and commitment, providing for a sentence of one and one-half years on the charge of failure to appear, enhanced by eight years under the habitual-offender statute. The district court ordered the sentence of nine and one-half years to be served consecutively to defendant's sentence on the charge of vehicular homicide.

Also on November 1, a few hours after the filing of the judgment, defendant's counsel filed a motion to withdraw defendant's plea. On the following day the dis-

trict court conducted a hearing at which trial counsel asked to be allowed to withdraw as defendant's attorney and defendant said he wanted new counsel. The district court "relieved [counsel] of further responsibilities." Although the district court indicated that it would appoint the public defender to represent defendant, no order was filed. The earliest evidence in the record that defendant was represented by the public defender is a motion to transport defendant, filed by the public defendant on December 6, 1988. The district court conducted a hearing on January 9, 1989, on defendant's motion to withdraw his plea. On January 17 the district court entered its order denying the motion. Defendant filed a notice of appeal from the order on February 16.

## II. PROCEDURAL CONSIDERATIONS AND JURISDICTION

### A. *Post–Conviction Motions for Relief*
#### 1. Introduction

In this and two other cases involving post-conviction motions for relief, we requested the parties to brief the question of our jurisdiction to hear the appeal. Our concern arose from SCRA 1986, 5–802, the Rule of Criminal Procedure entitled "Habeas corpus." The rule provides a means for a person "in custody or under restraint" to contend

> that such custody or restraint is, or will be, in violation of the constitution or laws of the State of New Mexico or of the United States; that the district court was without jurisdiction to impose such sentence; that the sentence was illegal or in excess of the maximum authorized by law or is otherwise subject to collateral attack.

*Id.*, Para. A. Paragraph G of Rule 5–802 states that a defendant may obtain review of denial of the writ only through filing a petition for certiorari with the supreme

court. Because the defendants in the three cases sought relief that might be obtained through a petition under Rule 5–802, we requested the parties' views on what impact, if any, Rule 5–802 has on our jurisdiction in this case.

Our first inquiry must be whether Rule 5–802 is intended to be the exclusive means for seeking post-conviction relief. We hold that it is not. We review the two rules and two statutes providing for post-conviction motions for relief and hold that both rules and one of the two statutes are not preempted by Rule 5–802.[1]

#### 2. Discussion

■ The two rules providing for post-conviction motions for relief are SCRA 1986, 5–614 and –801 (Cum.Supp.1989). Rule 5–614 permits filing a motion for new trial. If the motion is based on the ground of newly discovered evidence, a defendant may file it within two years of the final judgment. Otherwise, a motion for new trial must be filed within ten days after the verdict, unless within that ten days the court extends the time. Rule 5–801, entitled "Modification of sentence," permits the filing of a motion to reduce a sentence within thirty days after sentence is imposed or within thirty days of an appellate court mandate, order, or judgment upholding the judgment of conviction. Because nothing in the Supreme Court Rules states that either Rule 5–614 or Rule 5–801 is limited by Rule 5–802, we have no doubt that Rule 5–802 does not preempt either of the other rules. The supreme court has been explicit when it intended that one of its rules supersede another rule. *See, e.g.,* Compiler's Notes to SCRA 1986, 1–093.

■ The two statutes providing for motions for relief after a conviction are NMSA 1978, Sections 31–11–6 (Repl.Pamp. 1984) and 39–1–1 (Orig.Pamp.). The former, as revealed by a consideration of the

1. We do not consider the availability of any writ proceeding in the district court pursuant to New Mexico Constitution article VI, Section 13, other than petitions for a writ of habeas corpus, because neither party claims that any of those possible procedures is applicable. *See State v.*

*Martinez,* 110 N.M. 357, 796 P.2d 250 (Ct.App. 1990) (possibility of writ of mandamus arising from claim of failure to give credit toward sentence for time spent incarcerated during pendency of appeal).

pertinent history of the statute and related rules, is preempted by Rule 5–802.

The scope of Section 31–11–6 is essentially identical to that of Rule 5–802. The first paragraph of the statute states:

A prisoner in custody under sentence of a court established by the laws of New Mexico claiming the right to be released upon the ground that the sentence was imposed in violation of the constitution of the United States, or of the constitution or laws of New Mexico, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Section 31–11–6(A) permits such motions to be made at any time. When the statute was enacted in 1966, it tracked the language of Rule of Civil Procedure 93, which had taken effect on January 1, 1966. Then in June 1975 the supreme court adopted Rule of Criminal Procedure 57, which was to replace Rule 93 with respect to all motions for post-conviction relief filed on or after September 1, 1975. Rule 57 provided for motions to vacate, set aside, or correct a sentence, but differed somewhat from Rule 93. For example, Rule 57(a), unlike Rule 93, specifically stated that "[t]he order of the district court on a motion under this rule is final and not subject to appeal." Also, Rule 57(b), although not setting any fixed deadlines for motions, permitted dismissal of certain delayed or repetitious motions, such as those whose delay prejudiced the state. We held in *State v. Garcia*, 101 N.M. 232, 680 P.2d 613 (Ct.App.1984) that Rule 57 superseded Section 31–11–6 insofar as the two conflicted because Section 31–11–6 is a statute governing procedure, over which the state supreme court has ultimate authority.

Although the supreme court superseded Rule 57 with Rule 5–802 in February 1986, we do not believe that the rule change revived Section 31–11–6. The purpose of the 1986 revision was to simplify and expedite post-conviction proceedings. While Rule 57 remained in effect, a defendant could proceed under that rule and then petition for a writ of habeas corpus. Indeed, the rule required exhaustion of the remedy under the rule before application for the writ. R. 57(j). Replacing Rule 57 by Rule 5–802 eliminated Rule 57 motion practice by providing that a defendant in custody could proceed directly to petition for a writ of habeas corpus. Permitting motions pursuant to Section 31–11–6 would render futile the supreme court's action in eliminating Rule 57, because the two-step procedure of motion followed by petition for writ would still be available. We are confident that the supreme court did not intend that result. Because of the supreme court's predominance when a supreme court rule and a statute conflict on matters of procedure, we hold that Section 31–11–6 has been preempted.

On the other hand, the second statute providing for post-conviction relief is still effective. The pertinent provisions of Section 39–1–1 state:

Any judgment, or decree, except in cases where trial by jury is necessary, may be rendered by the judge of the district court at any place where he may be in this state * * *. Final judgments and decrees, entered by district courts in all cases tried pursuant to the provisions of this section shall remain under the control of such courts for a period of thirty days after the entry thereof, and for such further time as may be necessary to enable the court to pass upon and dispose of any motion which may have been filed within such period, directed against such judgment; provided, that if the court shall fail to rule upon such motion within thirty days after the filing thereof, such failure to rule shall be deemed a denial thereof[.]

Although this statute has been superseded in part by Rules 5–614 and –801, which provide the specific provisions governing motions for new trial and motions for reconsideration of sentence, we do not believe that it was in any way invalidated by Rule 5–802.

The supreme court's elimination of Rule 57 motion practice when it promulgated Rule 5–802 does not imply a rejection of all post-conviction motion practice. Some post-conviction motion practice promotes efficiency; some does not. When a defendant challenges a conviction well after trial, duplication of effort results from compelling the defendant to first proceed by motion before commencing a habeas corpus proceeding, as was required before Rule 5–802 superseded Rule 57.

On the other hand, in the circumstances when Section 39–1–1 would apply, motion practice has substantial advantages that outweigh the potential for duplication of effort. Motions under Section 39–1–1 must be filed promptly after judgment and be promptly decided. Such motions are brought while the proceedings leading to the judgment are fresh in the minds of counsel and the court; they are ordinarily considered sufficiently promptly that action by the district court can render an appeal unnecessary. Because the matters are fresh, several of the provisions of Rule 5–802 (such as those requiring statements regarding prior attempts to seek relief) would serve no useful purpose. Thus, the very concern for efficiency that motivated the elimination of post-conviction motion practice under Rule 57 argues in favor of continuing motion practice under Section 39–1–1. We recently noted the virtues of Section 39–1–1 practice in *State v. Gonzales*, 110 N.M. 218, 794 P.2d 361 (Ct.App. 1990) in which we affirmed the state's right to proceed under that statute to seek reconsideration of a pre-trial motion dismissing an indictment. We see no reason to assume that the supreme court intended to eliminate Section 39–1–1 practice when it superseded Rule 57 with Rule 5–802.

To summarize, defendants seeking to challenge their convictions or sentences may proceed in accordance with Rules of Criminal Procedure 5–614, –801, and –802, and, to the extent not contrary to Rules 5–614 and –801, in accordance with Section 39–1–1.

### 3. Application to this Case

Defendant's motion to withdraw his plea does not come within the terms of Rule 5–614 (motions for new trial) or Rule 5–801 (motions for modification of sentence). We therefore consider only Section 39–1–1 and Rule 5–802.

A motion to withdraw a guilty plea made within thirty days of judgment comes within the terms of Section 39–1–1. *See State v. Gonzales*. Under the statute, however, a motion is deemed denied if not granted within thirty days. Therefore, if we construe defendant's November motion as arising under Section 39–1–1, the district court was without jurisdiction to conduct a hearing on that motion in January. As a result, any appellate review of the motion would need to be based on the record as it stood thirty days after the filing of the motion. We could not consider any evidence admitted at the January hearing.

Alternatively, defendant's motion to withdraw his plea might be construed as a petition for a writ of habeas corpus pursuant to Rule 5–802. Although defendant's motion was not denominated as a petition for a writ of habeas corpus, we are not governed by the nomenclature of a pleading so long as the substance of the pleading conforms with the applicable rule. *See Phelps Dodge Corp. v. Guerra*, 92 N.M. 47, 582 P.2d 819 (1978). Nevertheless, we need not decide whether defendant's motion sufficiently satisfies the requirements for a Rule 5–802 petition. Any review of district court rulings on Rule 5–802 petitions is by the supreme court, not this court. If the petition is granted, the state may appeal to the supreme court. R. 5–802(G)(1). If it is denied, the defendant may file a petition for certiorari with the supreme court. *See* R. 5–802(G)(2); SCRA 1986, 12–501. Despite defendant's contentions that various constitutional and statutory provisions guarantee him a right to appeal the denial of a Rule 5–802 petition, this court will not consider a challenge to a rule adopted by our supreme court. *See*

*Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973); *State v. Garcia.*[2]

Anticipating our ruling on that point, defendant urges us to proceed pursuant to NMSA 1978, Section 34-5-10 (Repl.Pamp. 1981), which permits us to transfer to the supreme court an appeal that should have been docketed in that court but was filed in the court of appeals. He asks that we transfer to the supreme court any issues raised in his brief that we find to be precluded from our review because of Rule 5-802(G)(2). Section 34-5-10, however, refers only to the transfer between New Mexico's appellate courts of a "matter on appeal." It does not refer to petitions for writs of certiorari. Moreover, even if Section 34-5-10 could be construed as permitting the transfer of such petitions, we see no purpose to be served by relying on that statute in this case. As a practical matter, defendant can accomplish the same result by seeking review by the supreme court through a petition for a writ of certiorari to this court.

## B. *Timeliness of Appeal*

The next issue that presents itself is the timeliness of defendant's appeal. Two matters briefed by defendant could have been raised on direct appeal from the judgment: (1) the application of the failure-to-appear statute to defendant's failure to appear at sentencing, and (2) the use of the vehicular homicide conviction to enhance defendant's sentence for failure to appear. The deadline for filing a notice of appeal from the judgment was thirty days after the judgment. SCRA 1986, 12-201(A). As for defendant's motion to withdraw his plea, the deadline for appealing the denial of that motion was sixty days after filing the motion. (The motion was deemed de-

nied thirty days after it was filed and an appeal must be filed within thirty days of the denial.) *See id.;* § 39-1-1. Neither deadline was met.

Despite the late filing of the notice of appeal, defendant argues that we should consider all issues raised in his brief. He relies on *State v. Duran,* 105 N.M. 231, 232, 731 P.2d 374, 375 (Ct.App.1986), in which we established "a conclusive presumption of ineffective assistance of counsel where notice of appeal or affidavit of waiver are not filed within the time limit required." Because we cannot permit such ineffective assistance of counsel to deprive a defendant of the right to appeal, we will hear an untimely appeal in that circumstance. *See id.*

■ *Duran,* however, is distinguishable from the present case. It was considering an appeal from a verdict after trial. Criminal defendants convicted at trial generally file a notice of appeal. As a result, (1) the absence of a notice of appeal and an affidavit of waiver strongly suggests the failure of trial counsel to consult adequately with the client concerning the right to appeal; and (2) creating a conclusive presumption in that circumstance would not significantly increase the burden on this court. Moreover, the presumption would be in the interest of finality. In the absence of the presumption, the question of ineffectiveness of counsel could be litigated for years in habeas corpus proceedings, with the likely result that an untimely appeal ultimately would be permitted.

In contrast, after a plea of guilty or no contest, appeals are uncommon. After all, only a limited number of issues can be raised on appeal from a conviction based on a plea. Failure to appeal does not imply

2. Even if we did consider defendant's arguments, we would rule against him. The constitutional right of appeal found in New Mexico Constitution article VI, Section 2 provides a criminal defendant the right to appeal a conviction *once. See State v. Garcia.* Because defendants to whom Rule 5-802 is applicable have a right to appeal their convictions, the non-appealability of adverse decisions under that rule does not violate the New Mexico Constitution. *See id.* Defendant's statutory argument is also an-

swered by *Garcia.* Defendant's equal protection challenge (that defendants are irrationally disadvantaged because they cannot directly appeal denials of petitions for writs of habeas corpus whereas the state can directly appeal grants of habeas corpus) is without factual basis because defendants are given the "much more efficacious" remedy of an original action in the supreme court. *See In re Forest,* 45 N.M. 204, 208, 113 P.2d 582, 584 (1941).

lack of diligence by counsel. We have never suggested that counsel should obtain affidavits of waiver of appeal when appeals are not pursued after a plea of guilty or no contest. In addition, creation of a conclusive presumption of ineffective assistance of counsel when such a plea has not been appealed would provide defendants with an automatic right to an untimely appeal from the plea. Appellate courts would likely be burdened with numerous additional appeals reopening old cases. The interest in finality would be thwarted, not advanced. Therefore, we do not extend the conclusive presumption adopted in *Duran* to include appeals from pleas of guilty or no contest.

 Nevertheless, we will permit defendant's untimely appeal. This case presents an unusual fact pattern. Promptly after judgment was filed, defendant sought to withdraw his plea, complaining about the representation he had received from trial counsel. Upon trial counsel's request to withdraw as defendant's attorney, the district court removed trial counsel from "further responsibilities" in the case. Although the trial judge indicated that he would appoint a public defender to represent defendant, there is no record of that representation until more than a month later; and the motion filed by the public defender at that time had nothing to do with the merits of this appeal. Thus, defendant may well have been without counsel during a period of time that was critical with respect to assertion of his appellate rights.

Moreover, the state has not contested defendant's claim that he was denied effective assistance of counsel. We are not bound by the state's concession, but in the circumstances of this case we believe that it would be contrary to the efficient administration of justice to remand for a hearing on the issue of effective assistance of counsel and then reconsider the matter on a further appeal. *See State v. Duran.* Therefore, we will assume that the untimeliness of the appeal was the consequence of ineffective assistance of counsel and will treat defendant's appeal as if the notice had been filed in a timely fashion, from both the judgment and from the deemed denial of the motion to withdraw his plea.

## III. DENIAL OF MOTION TO WITHDRAW PLEA

 As explained above, we have jurisdiction to review defendant's motion to withdraw his plea only insofar as we consider that motion to be pursuant to Section 39-1-1. Yet under that statutory provision the motion was deemed denied thirty days after it was filed. We consider the appeal from that denial as if the notice of appeal had been filed in a timely fashion, thirty days after the deemed denial. Consequently, there is no proper evidentiary record for us to consider with respect to the motion, because evidence on the matter was not offered until the January hearing, which occurred after the time for appeal had expired. In the absence of evidentiary support for the motion, we must affirm its denial.

## IV. APPLICABILITY OF SECTION 31-3-9 TO FAILURE TO APPEAR AT SENTENCING

 Section 31-3-9 reads as follows:

Any person released *pending trial or appeal* in any criminal action who willfully fails to appear before any court or judicial officer as required:

A. is guilty of a fourth degree felony, if he was released in connection with a felony charge; or

B. is guilty of a petty misdemeanor, if he was released in connection with a charge of a misdemeanor or a petty misdemeanor. [Emphasis added.]

Defendant contends that failure to appear at sentencing is not encompassed by the statute, because sentencing occurs after trial (not "pending trial") and prior to appeal (not "pending appeal"). In the abstract, defendant's construction of the statutory language is a reasonable one. Alternatively, however, "trial" could be construed as including all those proceedings within the district court's jurisdiction, at least through sentencing. The choice between these two possible meanings of "trial" is an easy one. We avoid construing

**400**

statutes so as to render their application absurd or unreasonable. *See State v. Ellenberger,* 96 N.M. 287, 629 P.2d 1216 (1981). Defendant has not suggested, nor can we conceive of, any reason to relieve defendants of criminal responsibility for failure to appear if that failure occurs after conviction by the jury and before filing a notice of appeal. The purpose of the statute requires us to hold that defendant's trial was "pending" at the time of his sentencing hearing.

## V. ENHANCEMENT OF SENTENCE

Defendant's final contention is that his conviction for vehicular homicide cannot be used to enhance his failure-to-appear sentence. NMSA 1978, Section 31–18–13(A) (Repl.Pamp.1987) explicitly provides that "all persons convicted of a crime under the laws of New Mexico shall be sentenced in accordance with the provisions of the Criminal Sentencing Act * * *." The Criminal Sentencing Act includes the habitual-offender statute. Under that statute the extent to which a defendant's sentence can be enhanced depends on the number of the defendant's prior felony convictions. Each prior felony conviction must be part of a "separate transaction or occurrence." § 31–18–17. Each felony in the sequence of prior felonies must have been committed after conviction for the preceding felony. *See State v. Linam,* 93 N.M. 307, 600 P.2d 253, *cert. denied,* 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979).

Defendant makes two arguments. First, he contends that the vehicular homicide and the failure to appear for sentencing constituted parts of the same transaction or occurrence, because "[t]he vehicular homicide is part of the factual basis for the failure to appear charge." The argument is meritless. The two acts—the failure to appear and the vehicular homicide—were far from contemporaneous, one being committed after conviction for the other; and, contrary to defendant's suggestion, the state did not have to prove vehicular homicide as an element of the failure-to-appear offense.

Defendant's second argument is that the habitual-offender provisions do not apply because the failure-to-appear statute has its own enhancement provision, in that the penalty is greater for failure to appear at a felony proceeding than at a misdemeanor proceeding. Despite the statutory language providing that the habitual-offender statute should apply to all persons convicted of a crime, we have recognized exceptions to the general rule. Defendant relies on *State v. Keith,* 102 N.M. 462, 697 P.2d 145 (Ct.App.1985). In that case the defendant had been convicted under the New Mexico robbery statute, which provides an enhanced penalty for an armed robber who has a prior conviction for armed robbery. NMSA 1978, § 30–16–2 (Repl.Pamp.1984). We held that a prior armed robbery conviction used to enhance a defendant's sentence pursuant to the provisions of Section 30–16–2 cannot also be used as a prior felony conviction under the habitual-offender statute.

Defendant could also find some support in our recent decision in *State v. Haddenham,* 110 N.M. 149, 793 P.2d 279 (Ct.App. 1990). The charge in that case was possession of a firearm by a convicted felon. We held that it was improper to use a prior felony as both (1) the felony used to establish that defendant was a *felon* in possession and (2) a felony to establish that defendant was a habitual offender. As we stated in *Haddenham,* our holdings in that case and in *Keith* were matters of statutory construction. We decided that the legislature did not intend the results sought by the state.

■ We believe that the decisions in *Keith* and *Haddenham* both derive from a reasonable assumption about legislative intent: if a prior felony conviction is already taken into account in determining the punishment for the specific crime, the legislature did not intend that prior felony conviction also to be used in establishing that defendant was a habitual offender. When the legislature set the punishment for robbery in the statute considered in *Keith,* the legislature necessarily understood that any individual punished under that statute had a prior felony conviction. Similarly, "[t]he legislature in fixing the penalty for the

offense of felon in possession has also taken into consideration the fact of defendant's prior felony conviction." *State v. Haddenham,* at 153, 793 P.2d at 283.

The situation in this case is distinguishable. When the legislature set the penalty for failure to appear at trial, it could not have assumed that the person who had failed to appear would be convicted at the trial. On the contrary, the legislature should have presumed the innocence of an individual facing trial. The reason that the penalty for failure to appear is greater when the charge at the trial is a felony rather than a misdemeanor is not that the legislature decided that one who has been *accused* of a felony is a worse person than one accused of a misdemeanor. The reason is that a felony proceeding is a more important, a more serious, proceeding than a misdemeanor proceeding and there is greater need to deter the accused from failing to appear.

The rule of statutory construction underlying our decisions in *Keith* and *Haddenham* is, "Where the legislative intent is to permit the use of the same facts to impose an enhanced sentence, the legislation must clearly so indicate." *State v. Haddenham,* at 154, 793 P.2d at 284. Here, however, the same facts are not used both to prove the offense and to enhance the punishment. To prove the offense of failure to appear, the state need not establish that the defendant was convicted of or committed the offense for which the defendant was on trial. Conviction of the offense being tried is necessary for purposes of the habitual-offender statute, but not to prove failure to appear. We would have a different case if the sentence being enhanced had been imposed for the offense of escape by a convicted felon. *See State v. Cox,* 344 So.2d 1024 (La.1977).

In short, we do not read the penalty provisions of the failure-to-appear statute as the equivalent of enhancement statutes that increase penalties for those who have been convicted of prior crimes. In trying to discern legislative intent, we should not presume that the legislature set the penalty for failure to appear on the assumption that a person accused of a crime has actually committed the crime. We should presume that the legislature had already taken into account that the defendant had committed a prior offense only when, as in *Keith* and *Haddenham,* the statutory penalty is imposed solely on defendants who have been convicted of a prior offense.

Moreover, permitting application of the habitual-offender statute in the circumstances of this case leads to a consistent, rather sensible statutory scheme. The legislature has imposed a greater penalty for failure to appear at a felony trial than at a misdemeanor trial. We also find it reasonable to impose a greater penalty for failure to appear after conviction than prior to conviction. Society's interest in punishing and deterring an individual for failing to appear is greater when the failure to appear occurs after conviction. After conviction, the person at large is not merely an accused, but a proven violator. Yet under the failure-to-appear statute alone, the penalty is the same no matter when during the proceedings the defendant failed to appear. By permitting the conviction preceding the defendant's flight to be considered under the habitual-offender statute, the legislature provides a more severe sanction for a failure to appear that occurs after conviction. We see no reason to doubt that this result was the intent of the legislature. We see no reason not to apply the clear language of Section 31–18–13(A), requiring that defendant be sentenced in accordance with the Criminal Sentencing Act, which includes the habitual-offender statute.

## VI. CONCLUSION

For the above reasons we affirm defendant's convictions.

IT IS SO ORDERED.

ALARID and APODACA, JJ., concur.