2003-NMCA-147

82 P.3d 72

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Ricky Joe BENNETT, Defendant–Appellant.**

**No. 23,177.**

Court of Appeals of New Mexico.

Oct. 22, 2003.

Certiorari Denied, No. 28,367, Dec. 2, 2003.

Patricia A. Madrid, Attorney General, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

WECHSLER, Chief Judge.

{1} Defendant Ricky Bennett was convicted of aggravated battery with a deadly weapon against a household member contrary to NMSA 1978, § 30–3–16(C) (1995) and battery against a household member contrary to NMSA 1978, § 30–3–15 (1995, prior to 2001 amendment). On appeal, he asserts that error occurred both at trial and at sentencing. With regard to the trial, Defendant argues that the district court erred in granting the State's petition for an extension of time to prosecute his case and that there was insufficient evidence to support his convictions. At sentencing, the district court, after imposing the statutory penalties for Defendant's convictions, also found Defendant to be an habitual offender under NMSA 1978, § 31–18–17 (2003) and deemed the aggravated battery with a deadly weapon to be a serious violent offense under NMSA 1978, § 33–2–34(L)(4) (1999), the Earned Meritorious Deduction Act (EMDA). Defendant argues that the district court imposed an illegal sentence when it applied the EMDA to his conviction for aggravated battery with a deadly weapon on a household member. We affirm Defendant's convictions and reverse with regard to his sentence.

*Background*

{2} The charges against Defendant arose from events that occurred in May 2000, when Defendant and the victim were living together in a one-room apartment. The victim testified that on May 29, 2000, at approximately 4:00 a.m., she was awakened by Defendant's throwing things around the apartment. After the victim refused to give him money, Defendant ripped the telephone from the wall and struck the victim on the head with the telephone when she said that she was going to call the police. The victim, fearing that Defendant was out of control, began to get dressed so she could leave the apartment. Defendant then broke a glass bottle over her head, leaving an open wound that required twenty-five stitches to close. The victim fled the apartment, wearing jeans but no shirt, and called 911 from a pay phone. The police officers who responded to the call testified that they found her partially clothed, bleeding copiously, and hysterical. When the officers contacted Defendant, he told them that the victim had fallen down the stairs. The officers testified that they saw no blood on the stairs, but did find blood in the apartment.

{3} Following a jury trial, Defendant was convicted of aggravated battery against a household member for striking the victim with the bottle and battery against a household member for hitting her with the telephone. He was acquitted of an additional aggravated battery charge which was based on an incident that had occurred several days earlier. The district court also entered a directed verdict on a charge of tampering with evidence.

*Serious Violent Offense Under the EMDA*

{4} Defendant contends that the district court erred when it deemed his conviction for aggravated battery with a deadly weapon on a household member to be a serious violent offense under the EMDA because the crime is not specifically enumerated in the EMDA either in Section 33–2–34(L)(4) or in Section 33–2–34(L)(4)(n). The district court's authority to classify Defendant as a serious violent offender derives from Section 33–2–34, and our construction of this statute for the district court's authority in this case is an issue we analyze de novo as a matter of law. *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

{5} Under the EMDA, prisoners convicted of serious violent offenses may earn a monthly maximum of four days of good time for participation in various programs, while prisoners convicted of nonviolent offenses may earn a maximum of thirty days. Section 33–2–34(A)(1), (2). The EMDA defines thirteen offenses which are serious violent offenses as a matter of law. Section 33–2–34(L)(4)(a)–(m). Among those offenses is third degree aggravated battery under NMSA 1978, § 30–3–5(C) (1969); Section 33–2–34(L)(4)(c). The offense Defendant committed, third degree aggravated battery on a household member under Section 30–3–16, is not specifically listed in Section 33–2–

34(L)(4). It is also not listed in the thirteen additional offenses which the district court may adjudge to be serious violent offenses for the purposes of a reduced good time credit under Section 33-2-34(L)(4)(n).

**{6}** Our principal purpose in construing a statute is to effectuate the intent of the legislature. *State v. Ogden,* 118 N.M. 234, 242, 880 P.2d 845, 853 (1994). We look first to the plain language of the statute. *Id.* at 242, 880 P.2d at 853. If the meaning of the statutory language is clear and without ambiguity, we apply the statute as it is written.

{7} Our Supreme Court has warned that even within a statute that is clear on its face there may be ambiguity that may result in the failure to achieve the legislative intent. *State ex rel. Helman v. Gallegos,* 117 N.M. 346, 351-53, 871 P.2d 1352, 1357-59 (1994). On this basis, the State contends that the EMDA should be read to include third degree aggravated battery on a household member as a serious violent offense. The State argues that its inclusion is necessary in order to achieve the stated purpose of the EMDA that offenders who commit violent intentional felonies be required to serve a greater percentage of the sentence imposed upon them. The State correctly points out that the statutory language prohibiting third degree aggravated battery on a household member is the same as the language prohibiting third degree aggravated battery, the only difference being the inclusion of the status of the victim.

{8} The EMDA defines "serious violent offense" by reference to specific criminal offenses and the numbered statutory sections which contain the offenses. By way of example, it lists third degree aggravated battery by stating "third degree aggravated battery, as provided in Section 30-3-5 NMSA 1978." Section 33-2-34(L)(4)(c). If the statutory references were not included, we might agree with the State that the reference to third degree aggravated battery could include third degree aggravated battery on a household member. However, the statutory reference to Section 30-3-5 precludes our interpreting the reference to the offense as being ambiguous.

{9} Moreover, the EMDA definition includes as a serious violent offense "aggravated battery upon a peace officer, as provided in Section 30-22-25," also a third degree felony. Section 33-2-34(L)(4)(k). The listing of this offense indicates that the legislature did not intend its inclusion of third degree aggravated battery under Section 30-3-5 to include aggravated battery upon specific victims not expressly listed in the EMDA. *See Worland v. Worland,* 89 N.M. 291, 294, 551 P.2d 981, 984 (1976), (stating that "[t]he legislature was at pains to enumerate certain elements of domestic disputes when it wrote the statute. It therefore stands to reason that it meant to exclude those elements not included").

**{10}** The State's position can be read to ascribe a mistake to the legislature's enumeration of offenses within the EMDA in the failure to list aggravated battery on a household member. We acknowledge that in construing a statute, we may depart from its plain language if necessary to "correct a mistake or an absurdity that the [l]egislature could not have intended." *State v. McDonald,* 2003-NMCA-123, ¶ 23, 134 N.M. 486, 492, 79 P.3d 830, 836.

**{11}** We cannot say that Section 33-2-34 contains such a defect. In defining "serious violent offense," the legislature not only listed twenty-six separate offenses, but also specified the sections of the criminal code with regard to each offense. We presume that the legislature knows the law when enacting a statute. *Bybee v. City of Albuquerque,* 120 N.M. 17, 20, 896 P.2d 1164, 1167 (1995).

{12} The legislature created the crime of aggravated battery on a household member in 1995 by enacting the Crimes Against Household Members Act, N.M. Laws 1995, Ch. 221, § 1. Although aggravated battery and aggravated battery on a household member carry the same penalty, *compare* § 30-2-5(B), (C), *with* § 30-3-16(B),(C), the legislature expressly distinguished the crime of aggravated battery on a household member from the crime of aggravated battery. Significantly, this action was not the first time before enacting the EMDA that the legisla-

ture created a separate crime of aggravated battery specifying a particular victim. In 1989, the legislature created the crime of aggravated battery upon a school employee with the same elements and penalty as aggravated battery and different from aggravated battery only because of the additional element that the victim be a school employee. NMSA 1978, § 30–3–9(F) (1989). Aggravated battery upon a school employee is also not listed in the EMDA's definition of "serious violent defense." *See* § 33–2–34(L)(4).

{13} As we have recently stated, "the legislature appears to have carefully structured the EMDA." *McDonald,* 2003–NMCA–123, ¶ 23, 134 N.M. 486, 79 P.3d 830. As a matter of policy, the legislature could have considered the distinction that it created between the crimes of aggravated battery and aggravated battery on a household member and decided that it did not intend to include the latter within the EMDA. *See Bybee,* 120 N.M. at 20, 896 P.2d at 1167 (stating that even though result may seem contradictory, courts presume that the legislature knows the law and acts rationally); *see also* 7 Wm. & Mary J. Women & L. 383, 393 (2001), (discussing financial consequences to victim and children of prosecuting domestic violence crimes). We cannot conclude that the legislature made a mistake in its enactment of the EMDA.

*Extension of Time for Trial*

{14} Rule 5–604(B) of the Rules of Criminal Procedure provides that the trial of a criminal case shall begin within six months of the occurrence of the last of several events. In this case, the date of arraignment is the applicable event, and trial needed to commence on or before December 19, 2000. *See* Rule 5–604(B)(1) NMRA 2003. On December 8, 2000, the State filed a timely petition for an extension of time to bring Defendant's case to trial under Rule 5–604(E). The district court granted the extension on March 19, 2001, and the Supreme Court granted a second petition extending the time for trial until June 19, 2001. The trial was conducted on May 15, 2001. Our Supreme Court has recently held that a district court has the authority to rule on a timely-filed petition for

an extension of time after the date required for the commencement of trial under Rule 5–604. *State v. Sandoval,* 2003–NMSC–027, ¶¶ 12, 17, 134 N.M. 453, 456–457, 458–459, 78 P.3d 907, 910–911, 912–913.

{15} Defendant contends that the district court abused its discretion in granting the petition for extension of time because trial did not proceed until almost one year from the date of the alleged incident. He asserts that he was prejudiced by the delay because he was incarcerated and because the victim was unavailable for a period of time.

{16} However, Defendant affirmatively waived his right to a timely trial under Rule 5–604. Trial was originally scheduled for September 21, 2000. The record shows that on September 20, 2000, Defendant apparently made a strategic decision that he needed more time for discovery and filed a stipulated motion for continuance of his trial. The motion for continuance stated that "[t]he defendant, though incarcerated, has no objection to a continuance nor to an extension but only wants to ensure he gets a fair trial[.]" In a later paragraph in the motion, Defendant again declared that "[t]here will be no opposition to an extension, if necessary." On the basis of this motion, the district court granted the continuance. Given the context and language of the motion, we determine that the reference to "an extension" is to an extension of time under Rule 5–604(C) and that Defendant waived the operation of the rule. *See State v. Eskridge,* 1997–NMCA–106, ¶¶ 11–12, 124 N.M. 227, 947 P.2d 502 (holding that defense attorney's oral representation that setting of plea hearing after expiration of time to commence trial was not a problem, constituted waiver of Rule 5–604(C) requirement).

{17} Moreover, Defendant does not challenge that there was good cause shown to grant the extension because the district court was unable to conduct trial before December 19, 2000. Rule 5–604(C). Nor does Defendant state the manner in which the inability to locate the victim for a period of time caused him prejudice. *See In re Ernesto M.,* 1996–NMCA–039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."). The district court

did not err in granting the State's petition for an extension.

## Sufficiency of the Evidence

{18} Defendant challenges the sufficiency of the evidence for his conviction of aggravated battery with a deadly weapon challenging the credibility of the victim by alleging that the victim was intoxicated on the night in question. He asserts that her testimony was insufficient to convict him.

{19} We review the sufficiency of the evidence under a substantial evidence standard. *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado,* 1999–NMSC–008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). We must determine whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt. *State v. Sanders,* 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). We view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences to uphold the conviction, and disregarding all evidence and inferences to the contrary. *State v. Salazar,* 1997–NMSC–044, ¶ 44, 123 N.M. 778, 945 P.2d 996. In making this determination, a reviewing court "does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Sutphin,* 107 N.M. at 131, 753 P.2d at 1319.

{20} Relying upon *State v. Franklin,* 78 N.M. 127, 428 P.2d 982 (1967) and *State v. Boyer,* 103 N.M. 655, 712 P.2d 1 (Ct.App. 1985), Defendant suggests that if this Court were to reweigh the conflicting evidence in this case, we might find that a reasonable doubt existed in this case. However, as discussed, this standard is not the correct one for an appellate court. It is the role of the factfinder, in this case a jury, to resolve conflicts in the evidence. We have reviewed the record and arguments of counsel regarding Defendant's sufficiency of the evidence

claim. The victim testified at trial and was subject to cross-examination. The testimony of the responding officers presented evidence that supported the victim's account of the evening's events. Defendant did not present any witnesses at trial. The evidence presented in this case supports Defendant's convictions for aggravated battery with a deadly weapon and battery.

## Conclusion

{21} Third degree aggravated battery against a household member is not a serious violent offense under the EMDA. Defendant waived any claims under Rule 5–604, and there was sufficient evidence to support his convictions. We affirm Defendant's convictions. We reverse his sentence to the extent that it classifies Defendant as a serious violent offender under the EMDA. We remand for the district court to enter a proper sentence in accordance with this opinion.

{22} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and MICHAEL VIGIL, Judges.