2006-NMCA-142

147 P.3d 1138

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Bryan T. LORETTO, Defendant–
Appellant.**

**No. 25,813.**

Court of Appeals of New Mexico.

Oct. 5, 2006.

**706**

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Catherine A. Begaye, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Under the provisions of the Earned Meritorious Deductions Act (EMDA), a defendant will earn only four days a month of credit against his time in prison, as opposed to thirty days a month, if the crime of which he is convicted is designated as a serious violent offense. *See* NMSA 1978, § 33–2–34(A) (1999) (amended 2006) (explaining the thirty-day maximum credit for a nonviolent offense and the maximum of a four-day credit per month if the crime is a serious violent offense); NMSA 1978, §§ 33–2–36 to –38 (1999) (amended 2006). Defendant pled guilty to one count of attempted first degree criminal sexual penetration (CSP), contrary to NMSA 1978, § 30–9–11(C)(2) (2001) and NMSA 1978, § 30–28–1 (1963). He also pled guilty to two counts of criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, § 30–9–13(B)(1) (2001) (amended 2003) (current version at § 30–9–13(D)(1) (2003)). On appeal, Defendant asserts that the district court erred in designating the crimes of which he was convicted as serious violent offenses pursuant to Section 33–2–34(L)(4)(n) (1999).

{2} For the reasons we set out later in this opinion, we hold that (1) the attempt conviction is not subject to earned credit diminution; and (2) as to the CSCM convictions, the court failed to follow the standard for findings required for designation of the crimes as serious violent offenses. We therefore reverse and remand to the district court (1) to vacate its determination that the attempt conviction is a serious violent offense; and (2) to consider, under the required standard, whether the CSCM convictions are serious violent offenses, making appropriate findings of fact.

## BACKGROUND

{3} At Defendant's plea hearing, the State presented evidence it planned to submit at trial, including the following. Defendant forced a fourteen-year-old developmentally

delayed and hearing impaired victim to have intercourse and impregnated her. During intercourse, Defendant touched the victim's breasts, buttocks, and vagina. He also put his hand over the victim's mouth to keep her from screaming or yelling out.

{4} At the plea hearing, Defendant did not disagree with what the State presented. Defendant's attorney stated that "[w]e accept these actions," and admitted that what the State presented was "what the State will present." The attorney also stated that "we realize that that's the evidence that would come out" and that the factual basis was "sufficient as far as the touching is concerned." Defendant pled guilty "[k]nowing all of these things." Later, at sentencing, Defendant's attorney disputed that Defendant put his hand over the victim's mouth and that force was used.

{5} Several persons spoke on behalf of both the victim and Defendant at the sentencing hearing. Those appearing on behalf of the victim stated that she was born hearing impaired and mentally delayed, and explained that the victim was ten years old mentally. Witnesses also discussed the victim's trauma, lapse in learning skills, and paralyzing nightmares.

{6} In stating the reasons for the sentence and serious violent offense designations under Section 33–2–34(L)(4)(n) of the EMDA, the court stated:

> What is horrible is that this act, [Defendant], is probably one of the most despicable acts that a person can commit. Not only did you violate the sanctity of a 14–year–old girl, but a 14–year–old girl who was impaired.... A 14–year–old girl who with a mental age of a ten year old, could not have enticed you. I don't believe that.
>
> I believe that you were probably pretty well intoxicated, and whatever you may have seen as enticement, was in your own imagination[.] This is one of the crimes that this Court punishes to the full extent, because there's no excuse for it....
>
> I hope that this family, after they receive the kind of counseling and treatment, can get to the point where they no longer hate you, because it's not good to hate people, and it doesn't help anyone to hate

people. But I think part of what will help them recover is for me to lock you up for as long as I can lock you up, and that's what I'm going to do.

> I'm going to give you the full 12 years. And I'm going to require in a [f]inding that these are serious violent offenses, and that you will be required to do 85 percent of that time....

{7} Defendant contends that (1) the court erred in designating the attempt conviction as a serious violent offense because the crime is not one of the offenses enumerated in Section 33–2–34(L)(4)(n) that can be so classified, and (2) the court's findings do not support its designation of the two CSCM convictions as serious violent offenses.

## DISCUSSION

### Standard of Review

{8} We review de novo a court's interpretation of statutes and whether the court properly applied the law. *See State v. Romero,* 2002–NMCA–106, ¶ 6, 132 N.M. 745, 55 P.3d 441.

### The Attempt Conviction is Not Subject to Earned Credit Diminution

{9} The crime of attempted first degree CSP is not an offense enumerated in Section 33–2–34(L)(4)(n). A defendant's good time eligibility under the EMDA cannot be reduced for a crime that is not enumerated in that statute. *See State v. McDonald,* 2004–NMSC–033, ¶ 23, 136 N.M. 417, 99 P.3d 667 (holding that a defendant convicted of conspiracy was not disqualified from good time eligibility under the EMDA because conspiracy was not an enumerated crime); *State v. Bennett,* 2003–NMCA–147, ¶¶ 4–13, 134 N.M. 705, 82 P.3d 72 (holding that it was error to designate third degree aggravated battery on a household member as a serious violent offense, because the crime was not one enumerated in Section 33–2–34(L)(4)). On appeal, the State agrees that this crime cannot be punished as a serious violent offense. We hold that the attempt conviction is not subject to earned credit diminution.

**708**

### Findings Are Required for Designating a Crime as a Serious Violent Offense

{10} Defendant pled guilty to fourth degree CSCM. The applicable statute in force at the time of the crimes was Section 30–9–13 (2001). That statute, in pertinent part, reads:

> Criminal sexual contact of a minor is the unlawful and intentional touching of or applying force to the intimate parts of a minor or the unlawful and intentional causing of a minor to touch one's intimate parts....
>
> ....
>
> B. Criminal sexual contact of a minor in the fourth degree consists of all criminal sexual contact:
>
> (1) not defined in Subsection A of this section, of a child thirteen to eighteen years of age perpetrated with force or coercion[.]

§ 30–9–13(B)(1) (2001); 2001 N.M. Laws ch. 161, § 3. Fourth degree CSCM is listed in Section 33–2–34(L)(4)(n) and is therefore a serious violent offense "when the nature of the offense and the resulting harm are such that the court judges the crime to be a serious violent offense." *State v. Morales*, 2002–NMCA–016, ¶¶ 13, 16, 131 N.M. 530, 39 P.3d 747 (stating that the district court must consider the "resulting harm ... along with the nature of the offense to determine if a listed offense qualifies" as a serious violent offense).

{11} In *Morales*, we construed Section 33–2–34(L)(4)(n) to require the district court to make findings to support its determination that an offense is a serious violent offense under the EMDA. *See Morales*, 2002–NMCA–016, ¶¶ 12–16, 131 N.M. 530, 39 P.3d 747. We also set out the sort of findings a district court must make to designate the crimes listed in that section as serious violent offenses. *See id.* ¶¶ 1, 13, 16. In particular, in regard to the nature of the offense, the standard in *Morales* is that the district court must find that the crimes were "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *Id.* ¶ 16. We explained

that "the statutory factor of actual 'resulting harm' may be considered in determining a defendant's intent." *Id.* Also, and not to be ignored, leading into our statement of the standard for the findings required, we noted that "many of the offenses listed in Section 33–2–34(L)(4)(n) are characterized by multiple ways of committing the offense, some intentional and some not, and some utilizing physical force and some not." *Morales*, 2002–NMCA–016, ¶ 15, 131 N.M. 530, 39 P.3d 747. Then, based on examples of such differences, we stated "[t]hese are the differences in the ways of committing the offenses listed in Section 33–2–34(L)(4)(n), and a trial judge must have some way of measuring which ways amount to serious violent offenses and which do not." *Morales*, 2002–NMCA–016, ¶ 16, 131 N.M. 530, 39 P.3d 747.

{12} The *Morales* standard requires the district court to engage in a reasoned measurement process to assure that the harm and the nature of the offense bring the crime within Section 33–2–34(L)(4)(n). Because a court's designation of a crime as a serious violent offense affects the length of time the defendant serves time in prison, it is important that the court make specific findings both to inform the defendant being sentenced of the factual basis on which his good time credit is being substantially reduced, and to permit meaningful and effective appellate review of the court's designation. *Cf. State v. Lopez*, 2005–NMSC–036, ¶ 55, 138 N.M. 521, 123 P.3d 754 (stating that, in its statute permitting court aggravation of a basic sentence, the Legislature intended to provide for meaningful appellate review).

{13} In *Morales*, the defendant pled guilty to second degree kidnaping. 2002–NMCA–016, ¶ 2, 131 N.M. 530, 39 P.3d 747. "The facts elicited at sentencing indicated that [the d]efendant, while drunk, touched his crying daughter's chest and vaginal area while dragging her into his bedroom." *Id.* The district court designated the offense to be a serious violent one because "the victim is the [d]efendant's own daughter for purposes of [Section] 33–2–24." *Id.* (internal quotation marks omitted). On appeal, we determined that the district court "made no findings about the actual resulting harm to the victim, and most

of the findings related to [the d]efendant's past violence and his drinking habits, not to his intent or knowledge in regard to this offense." *Id.* ¶ 17. Importantly, we stated that while it appeared that there could be a factual basis for the requisite findings, "it is for the [district] court in the first instance to make the required findings." *Id.* ¶ 18.

{14} *Morales* calls for definitive determinations to be made by the district court in designating a crime as a serious violent offense under Section 33–2–34(L)(4)(n). *See Morales*, 2002–NMCA–016, ¶ 18, 131 N.M. 530, 39 P.3d 747. The court must, of course, conclude that the offense is a serious violent offense after considering the "nature of the offense and the resulting harm." § 33–2–34(L)(4)(n). In its process of measuring whether the way in which the offense was committed amounts to a serious violent offense, the court is to consider evidentiary facts material to the commission of the offense, including circumstances showing violence and indicating the actor's intent, knowledge, and reckless behavior. The court must then ultimately determine whether the crime was "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *Morales*, 2002–NMCA–016, ¶ 16, 131 N.M. 530, 39 P.3d 747. These determinations should not, however, be the end of the court's process. The defendant should be told what the court relied on to support the determinations. In addition, a district court should not leave it up to the appellate court either to speculate as to what the court relied on or to itself engage in judicial factfinding. These processes comport with the *Morales* standard, which is simply a reasonableness standard imposed to focus the exercise of judicial discretion when the court is considering whether "the nature of the offense and the resulting harm are such that the court judges the crime to be a serious violent offense." § 33–2–34(L)(4)(n); *cf. Lopez*, 2005–NMSC–036, ¶ 55, 138 N.M. 521, 123 P.3d 754 (discussing as a standard of reasonableness the statutory requirement that the court, in exercising its discretion under the statute permitting court aggrava-

tion of a basic sentence, write the reasons supporting the court's determination).

{15} With the *Morales* standard and the foregoing guideline in mind, we turn our attention to the district court's explanation in the present case of why the court designated the CSCM crimes as serious violent offenses. At the same time, we examine whether the explanation is wanting in terms of the *Morales* standard, that is, wanting in terms of the requirements that findings reflect that the crimes were committed in a physically violent manner, and that Defendant either intended to do serious harm or that Defendant's actions involved recklessness in the face of knowledge that his acts were reasonably likely to result in serious harm.

{16} Looking at the district court's statement made at Defendant's sentencing and to the question of harm, the court did not mention resulting harm in its findings beyond that of a violation of the victim's "sanctity." Although that term is defined in the dictionary in religious, holiness, or piety terms, we will assume that the court meant the term to mean one's intimate bodily privacy. Further, the court's one-word description was presumably intended to be a finding of the "actual resulting harm to the victim." *See Morales*, 2002–NMCA–016, ¶ 17, 131 N.M. 530, 39 P.3d 747. While the court's finding related to harm is wanting, we have no doubt that the victim, a fourteen-year-old child, who was mentally impaired with a mental age of ten, who was vulnerable, who was taken advantage of, and who was sexually abused and impregnated, was harmed by Defendant. The district court should have been more descriptive in regard to harm, but we think it unmistakable from what Defendant admitted at the plea hearing that the court found Defendant's sexual contact to have harmed the victim. Perhaps the obviousness of this observation is why Defendant does not specifically attack the district court's designation for failure to make a finding as to the actual harm.

{17} However, in regard to the remaining aspect of the *Morales* standard relating to the nature of the offense, the court failed to state how any of Defendant's acts amounted to an offense committed in a "physically vio-

lent manner." Further, while the court described Defendant's acts as "despicable," and indicated that Defendant was not enticed and that Defendant was intoxicated, the court failed to tie these circumstances and Defendant's conduct in any manner to the intent or recklessness in the face of knowledge standard set out in *Morales*.

 {18} Something more than the mere elements in the definition of CSCM need to be shown to designate the crime as a serious violent offense. *See Morales*, 2002–NMCA–016, ¶ 13, 131 N.M. 530, 39 P.3d 747 (stating that several offenses listed in Section 33–2–34(L)(4)(n) result in death, "which can be viewed as the greatest harm imaginable," and that, therefore, "the [L]egislature could not have intended amount of harm alone to qualify an offense as a serious violent one"; otherwise the Legislature would have included several offenses resulting in death among those considered serious violent offenses as a matter of law). Thus, while we agree that Defendant's conduct was "despicable," under *Morales* something more than the mere intentional touching or applying force to the intimate parts of a minor is required. The district court must engage in a reasoned process measuring the manner in which the crime crossed the line as a result of physical violence done with the intent or recklessness in the face of knowledge as stated in the *Morales* standard.

{19} The district court should have stated why Defendant's acts involved physical violence, and how the acts were either done with knowledge that they were reasonably likely to result in serious harm, or that the circumstances and acts constituted recklessness in the face of knowledge that the acts were reasonably likely to result in serious harm. These statements suffice as findings. In the present case there is nothing in the record showing what the court relied on that would permit application of the *Morales* standard.

 {20} Further, the district court's statement that "[t]his is one of the crimes that [the district court] punishes to the full extent" may indicate that it punishes all perpetrators of fourth degree CSCM as serious violent offenders. The Legislature has indicated its intent that not all fourth degree CSCM is punishable as a serious violent offense. *See* § 33–2–34(L)(4)(n); *see also State v. Worrick*, 2006–NMCA–035, ¶ 14, 139 N.M. 247, 131 P.3d 97 ("To the extent that the district court in this case believes that all vehicular homicides committed while DWI are deserving of serious violent offense designation, such views must be subordinated to the law, which is otherwise."), *cert. granted*, 2006–NMCERT–003, 139 N.M. 353, 132 P.3d 1039. As we pointed out in *Morales*, the offenses listed in Section 33–2–34(L)(4)(n) can be committed in varying ways. *Morales*, 2002–NMCA–016, ¶ 15, 131 N.M. 530, 39 P.3d 747. Fourth degree CSCM can be committed by either force or coercion. § 30–9–13(D)(1). As such, the Legislature may have intended to distinguish between a serious and a non-serious violent offense based on the manner in which a perpetrator committed the offense. *See Morales*, 2002–NMCA–016, ¶ 15, 131 N.M. 530, 39 P.3d 747. Thus, whether a defendant used force or coercion is a factor that a district court is to consider in determining whether fourth degree CSCM amounts to a serious violent offense.

{21} In the present case, there very well may have been more than sufficient evidence before the district court for it to designate the two CSCM crimes as serious violent offenses under the *Morales* standard. But where, as here, a statute allows earned credit to be reduced by the court based on a defendant's conduct and the resulting harm beyond that required for conviction, it remains better and required procedure for the district court to make findings from which the defendant should be able to understand that his acts were done in a physically violent manner with the intent or recklessness in the face of knowledge as stated and required in *Morales*. *See id.* ¶ 18.

## CONCLUSION

{22} Because it is not an enumerated offense in Section 33–2–34(L)(4)(n), we reverse

 

the district court's determination that the crime of attempted first degree CSP was a serious violent offense. Also, because of insufficient findings, we reverse the determination that the two counts of fourth degree CSCM were serious violent offenses, and remand the case to the district court to consider whether the offenses were serious violent offenses and to enter findings in accordance with this opinion.

{23} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and MICHAEL E. VIGIL, Judges.