The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>February 10, 2022</u>

**No. A-1-CA-38616**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.

**JULIANNA MONTANO a/k/a
JULIANNA P. MONTANO a/k/a
JULIANNA PAULINE MONTANO,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Daniel J. Gallegos, District Judge**

Hector H. Balderas, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**OPINION**

**ATTREP, Judge.**

{1}     Defendant Julianna P. Montano pled guilty to second degree homicide by vehicle, contrary to NMSA 1978, Section 66-8-101(C) (2016), for driving drunk and causing an accident resulting in the death of another human being. As part of its sentencing decision, the district court concluded that Defendant's conviction for second degree homicide by vehicle was a serious violent offense under the Earned Meritorious Deductions Act (EMDA), NMSA 1978, § 33-2-34 (2015). Defendant appeals this determination. Because second degree homicide by vehicle is not an enumerated "serious violent offense" under the EMDA and there is no basis to depart from the plain language of the EMDA, we hold that it is a nonviolent offense. We therefore reverse the district court's determination that Defendant's crime is a serious violent offense. We affirm as to Defendant's other claims of error on appeal.

**BACKGROUND**

**I.     Statutory Background**

{2}     The EMDA allows a prisoner confined in a facility designated by the Corrections Department to earn deductions from his or her sentence for good behavior and for participating in programs designed for rehabilitation (i.e., good time credit). *See* § 33-2-34(B), (D) (describing circumstances that permit a prisoner to earn meritorious deductions); § 33-2-34(F) (describing circumstances that render a

prisoner ineligible to earn meritorious deductions). As relevant to this case, the amount of deductions a prisoner may earn depends on whether the crime for which the prisoner is serving his or her sentence is a "serious violent offense" or a "nonviolent offense." A prisoner serving a sentence for a serious violent offense may only receive up to four days per month of deductions, § 33-2-34(A)(1), whereas a prisoner serving a sentence for a nonviolent offense may receive up to thirty days per month of deductions, § 33-2-34(A)(2).

{3} Seventeen crimes, enumerated in fourteen statutory provisions, are, by definition, serious violent offenses. Section 33-2-34(L)(4)(a)-(n). We refer to these crimes as "per se serious violent offenses." Another twenty crimes, enumerated in fifteen statutory provisions, are serious violent offenses if the district court finds that "the nature of the offense and the resulting harm" of the crime under a given set of facts warrant the designation. Section 33-2-34(L)(4)(o); *see also State v. Solano*, 2009-NMCA-098, ¶ 10, 146 N.M. 831, 215 P.3d 769 (explaining that a district court must find "that the crime was committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm" (internal quotation marks and citation omitted)). We refer to these crimes as "discretionary serious violent

offenses." All remaining crimes, i.e., those not designated serious violent offenses, are, by definition, nonviolent offenses.[1] Section 33-2-34(L)(3).

{4}     New Mexico defines the crime of "homicide by vehicle" as "the killing of a human being in the unlawful operation of a motor vehicle." Section 66-8-101(A). Prior to 2016, a person committing homicide by vehicle—whether while under the influence of intoxicating liquor or any drug (DWI) or while violating NMSA 1978, Section 66-8-113 (1987) (reckless driving)—was guilty of a third degree felony and subject to a basic sentence of six years' imprisonment. Section 66-8-101(C) (2004); NMSA 1978, § 31-18-15(A)(8) (2019)[2] (providing a basic sentence of six years' imprisonment for a defendant convicted of a "third degree felony resulting in the death of a human being"). Under the EMDA, the crime of "third degree homicide by vehicle," as provided in Section 66-8-101, is a discretionary serious violent offense. Section 33-2-34(L)(4)(o)(14).

{5}     The Legislature amended Section 66-8-101 in 2016. The amendment elevated the crime of homicide by vehicle (DWI) to a second degree felony. Section 66-8-101(C). A person committing that offense is subject to a basic sentence of fifteen

---

[1] Offenders serving a sentence of life imprisonment or life imprisonment without the possibility of release or parole are an exception since they are ineligible to receive earned meritorious deductions. Section 33-2-34(G).

[2] Although Section 31-18-15 was amended in 2007 and 2016, these amendments did not substantively alter the provisions we cite in this opinion. We, therefore, cite the most recent version of Section 31-18-15 throughout this opinion for convenience.

years' imprisonment. Section 31-18-15(A)(4). The amendment did not change homicide by vehicle while driving recklessly—a person committing this offense is still guilty of a third degree felony, subject to a basic sentence of six years' imprisonment. Section 66-8-101(D); § 31-18-15(A)(8). As for the EMDA, the Legislature has not amended it since 2015. As a result, the crime of "second degree homicide by vehicle," which did not exist prior to 2016, is not enumerated as either a per se or discretionary serious violent offense. *See* § 33-2-34(L)(4).

## II.    Factual and Procedural Background

{6}    A grand jury indicted Defendant with several crimes in connection with her driving drunk on Interstate 40 in late 2017 and causing an accident resulting in the death of Patricia Urban. Defendant and the State ultimately reached an agreement in which Defendant pled guilty to one count of second degree homicide by vehicle in exchange for the dismissal of the remaining charges. The parties agreed that the district court would sentence Defendant to a term of imprisonment of between four and seven years, but made no other agreement as to sentencing. At the sentencing hearing, the district court, consistent with the plea agreement, imposed the basic sentence of fifteen years, but suspended eight of those years—leaving Defendant with an effective term of imprisonment of seven years. The district court deferred ruling on whether Defendant's crime constituted a serious violent offense for purposes of the EMDA.

4

{7}  Relying on the fact that the EMDA does not list second degree homicide by vehicle as a serious violent offense, *see* § 33-2-34(L)(4), Defendant moved the district court to deem her a nonviolent offender. After holding a hearing, the district court entered a written order denying Defendant's motion. Relying on principles of statutory construction, the district court agreed with Defendant that, under the plain meaning of the EMDA, she was convicted of a nonviolent offense. The district court nonetheless thought it "absurd" that the crime of second degree homicide by vehicle was a nonviolent offense, whereas the crime of third degree homicide by vehicle, a less serious offense, could be designated a serious violent offense. The district court thus determined, "the Legislature simply committed an oversight by not amending Section 33-2-34 to categorize second degree homicide by vehicle as a serious violent offense." Finding that Defendant acted recklessly in the face of knowledge that her actions were reasonably likely to result in harm, the district court ruled her crime to be a serious violent offense. Defendant appeals the district court's determination that second degree homicide by vehicle is a discretionary serious violent offense under the EMDA.

**DISCUSSION**

**I.  Second Degree Homicide by Vehicle Is Not a Serious Violent Offense Under the EMDA**

5

{8}     Whether the district court erred in designating Defendant's conviction for second degree homicide by vehicle a serious violent offense presents a matter of statutory construction, which we review de novo. *See State v. Bennett*, 2003-NMCA-147, ¶ 4, 134 N.M. 705, 82 P.3d 72 ("The district court's authority to classify [the d]efendant as a serious violent offender derives from Section 33-2-34, and our construction of this statute for the district court's authority in this case is an issue we analyze de novo as a matter of law."). "The primary goal in interpreting a statute is to give effect to the Legislature's intent; we first look at the words chosen by the Legislature and the plain meaning of those words." *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). Typically, "[i]f the meaning of the statutory language is clear and without ambiguity, we apply the statute as it is written." *Bennett*, 2003-NMCA-147, ¶ 6; *see also State v. Maestas*, 2007-NMSC-001, ¶ 14, 140 N.M. 836, 149 P.3d 933 ("Our role is to construe statutes as written and we should not second guess the [L]egislature's policy decisions."). Further, "[w]e will not read into a statute any words that are not there, particularly when the statute is complete and makes sense as written." *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125.

{9}     Before turning to the matter at hand, we observe that this Court and our Supreme Court have addressed challenges similar to the one presented today, in which a district court has designated a crime a serious violent offense even though

it was not so enumerated in the EMDA. *See State v. McDonald*, 2004-NMSC-033, ¶¶ 19-23, 136 N.M. 417, 99 P.3d 667; *Bennett*, 2003-NMCA-147, ¶¶ 4-13. In this area in particular, our courts have emphasized that the Legislature has carefully structured the EMDA. *See McDonald*, 2004-NMSC-033, ¶ 20; *Bennett*, 2003-NMCA-147, ¶ 13. In turn, our courts have rejected the idea that a particular crime's nondesignation as a serious violent offense was a legislative mistake and have rejected the idea that judicial rectification of such an omission is necessary to effectuate the legislative purpose of the EMDA or avoid an absurdity. *See McDonald*, 2004-NMSC-033, ¶¶ 21-23; *Bennett*, 2003-NMCA-147, ¶¶ 10-13. Instead, our courts have uniformly given effect to the plain language of the EMDA and left it to the Legislature to amend the EMDA if its plain terms do not in fact reflect the Legislature's will. *See McDonald*, 2004-NMSC-033, ¶¶ 19-23 (rejecting the claim that conspiracy to commit any crime enumerated in the EMDA should be a serious violent offense when the EMDA contains no such language); *Bennett*, 2003-NMCA-147, ¶¶ 4-13 (rejecting the claim that the Legislature made a mistake when it classified third degree aggravated battery as a per se serious violent offense but did not classify third degree aggravated battery on a household member as such an offense); *see also State v. Loretto*, 2006-NMCA-142, ¶¶ 9, 22, 140 N.M. 705, 147 P.3d 1138 (reversing the district court's determination that attempted first degree

criminal sexual penetration was a serious violent offense when attempt was not enumerated in the EMDA).

{10} With this authority in mind, we turn to the matter at hand. Second degree homicide by vehicle is not enumerated in the EMDA as either a per se or discretionary serious violent offense. *See* § 33-2-34(L). Consequently, as the district court recognized, and as the parties on appeal do not dispute, the plain meaning of the EMDA designates second degree homicide by vehicle a nonviolent offense. *See* § 33-2-34(L)(3) (defining "nonviolent offense" as "any offense other than a serious violent offense"); *see also McDonald*, 2004-NMSC-033, ¶ 23 (providing that a crime not enumerated as a serious violent offense in the EMDA is a nonviolent offense). We thus must give effect to this clear and unambiguous language, unless there is some basis to depart from it. *Bennett*, 2003-NMCA-147, ¶ 6; *see also Maestas*, 2007-NMSC-001, ¶ 14.

{11} To avoid application of the plain language of the EMDA, the State asserts that "[w]hen the homicide by vehicle statute was amended, the Legislature forgot to amend the EMDA to reflect the elevation of homicide by vehicle (DWI) to a second-degree felony" and, in essence, asks us to do so through judicial intervention. As proof of this purported legislative mistake, the State points to what it contends is an absurd result—i.e., the Legislature's inconsistent treatment of second degree homicide by vehicle by, on the one hand, increasing the basic sentence for this

8

offense but, on the other hand, permitting more good time credit for this offense than for some third degree homicide by vehicle offenders.

**{12}** We acknowledge that "in construing a statute, we may depart from its plain language if necessary to correct a mistake or an absurdity that the [L]egislature could not have intended." *Bennett*, 2003-NMCA-147, ¶ 10 (internal quotation marks and citation omitted); *see also Maestas*, 2007-NMSC-001, ¶ 15 ("We may only add words to a statute where it is necessary to make the statute conform to the [L]egislature's clear intent, or to prevent the statute from being absurd."). We, however, cannot agree with the State that this case presents such a circumstance.

**{13}** As an initial matter, the State's argument runs afoul of at least one basic canon of statutory construction. In construing statutes to effectuate legislative intent, we operate pursuant to a presumption that the Legislature is well informed of existing statutory and common law. *See Maestas*, 2007-NMSC-001, ¶ 21; *Jicarilla Apache Nation v. Rodarte*, 2004-NMSC-035, ¶ 15, 136 N.M. 630, 103 P.3d 554. The State's argument not only ignores this presumption but seems to invite us to draw the opposite presumption—that unless there is some affirmative proof the Legislature acted with full knowledge of existing law, we should presume it did not. The State's suggestion is made without citation to legal authority and we are unaware of any authority that would have us presume the Legislature is prone to mistake or forgetfulness, or lack of awareness for that matter. What is more, an intolerable

amount of ambiguity and uncertainty would be inserted into our construction of New Mexico statutes were we to presume the Legislature lacks a basic understanding of the law. We decline to employ such a presumption.

{14} Instead, to ascertain whether a departure from the plain meaning of the EMDA is necessary to correct a mistake or avoid an absurdity that the Legislature could not have intended, as the State suggests, we turn to legislative history. *See Maestas*, 2007-NMSC-001, ¶ 17 (examining legislative history to determine whether the Legislature intended the plain reading of a statute); *see also id.* ¶ 15 ("[A]ny divergence from the plain meaning of a statute must be done in conformity with clear legislative intent."). The State contends this history supports the idea that legislative oversight led to second degree homicide by vehicle being erroneously categorized as a nonviolent offense in the EMDA. In particular, the State cites the title of the Senate bill that amended Section 66-8-101, which reads in relevant part, "Increasing the Penalty for Homicide by Vehicle While Under the Influence of Intoxicating Liquor or Drugs." S.B. 118, 52nd Leg., 2nd Sess. (N.M. 2016), https://www.nmlegis.gov/Sessions/16%20Regular/final/SB0118.pdf. From this, the State contends that the legislative intent at the time was to increase penalties for this offense and that treating this offense as a nonviolent offense would be contrary to

10

such intent and thereby absurd.[3] So the reasoning seems to go, the Legislature must have forgotten to amend the EMDA.

{15}  A more fulsome review of the relevant legislative history undermines the State's position. As discussed, in 2016, the Legislature passed amendments to Section 66-8-101, which, in relevant part, elevated the crime of homicide by vehicle (DWI) to a second degree felony but retained homicide by vehicle while reckless driving as a third degree felony. *Compare* § 66-8-101 (2004), *with* § 66-8-101 (2016). During the same legislative session, contemporaneous documents considered along with the bill amending Section 66-8-101 and other proposed legislation reveal the Legislature was aware of the potential need to amend the EMDA but ultimately did not take action.

---

[3]On its face, the State's argument—that the designation of second degree homicide by vehicle as a nonviolent offense under the EMDA would be contrary to a legislative intent to increase the penalty for that offense—is doubtful for a couple reasons. First, the EMDA does not in fact alter the penalty for a crime or change a defendant's sentence. *See, e.g.*, *State v. Ayala*, 2006-NMCA-088, ¶ 6, 140 N.M. 126, 140 P.3d 547 ("[W]e have held that the EMDA does not change the defendant's sentence."). Second, while it is true that designating homicide by vehicle (DWI) a nonviolent offense permits offenders convicted of this crime to earn good time credit at a higher rate than before the 2016 amendment, such offenders still may serve significantly more prison time than they would have prior to 2016. *Compare* § 66-8-101(C) (2004) (third degree felony), *with* § 66-8-101(C) (2016) (second degree felony); *compare* § 31-18-15(A)(8) (six years' imprisonment for third degree felony resulting in death), *with* § 31-18-15(A)(4) (fifteen years' imprisonment for second degree felony resulting in death).

{16}     First, a document considered contemporaneously with the bill amending Section 66-8-101 reveals that the Legislature was alerted to the potential need to examine the EMDA in light of the proposed amendments to homicide by vehicle (DWI) in Section 66-8-101. The bill analysis by the Legislative Finance Committee provided, in its discussion of the fiscal cost of increasing penalties for homicide by vehicle, that "[t]he cost takes into consideration *earned meritorious deductions*." Fiscal Impact Report for S.B. 118, Fiscal Implications, at 2 (February 17, 2016), https://www.nmlegis.gov/Sessions/16%20Regular/firs/SB0118.PDF (emphasis added). *See State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶¶ 33, 35, 117 N.M. 346, 871 P.2d 1352 (providing that contemporaneous documents, including analyses from the Legislative Finance Committee, presented to and presumably considered by the Legislature during the course of enacting a statute, may be considered by a court to glean legislative intent). "Earned meritorious deductions" or "meritorious deductions" are terms appearing only in the EMDA and related statutory provisions. *See* NMSA 1978, §§ 33-2-36 (2006), -37 (2006); § 31-18-15(G) (requiring certain reporting by the New Mexico Sentencing Commission on earned meritorious deductions made pursuant to the EMDA). Its use apprised the Legislature that offenders convicted of second degree homicide by vehicle would, under the amended version of Section 66-8-101, be eligible to receive good time credit under

12

the EMDA and presumably alerted the Legislature of the potential need to examine the EMDA's treatment of this offense.

{17}    Second, and significantly, the Legislature, in the same session in which Section 66-8-101 was amended, considered amending the EMDA in a way that would have accounted for the elevation of homicide by vehicle (DWI) to a second degree felony. [4] *See* H.B. 305, 52nd Leg., 2nd Sess. (N.M. 2016), https://www.nmlegis.gov/Sessions/16%20Regular/bills/house/HB0305.pdf. House Bill 305 would have, among other things, made homicide by vehicle (DWI), as provided in Section 66-8-101, a per se serious violent offense under the EMDA. *See* H.B. 305, 52nd Leg., 2nd Sess. (N.M. 2016), at 8. The bill also would have removed third degree homicide by vehicle, as provided in Section 66-8-101, from the list of discretionary serious violent offenses, making it a nonviolent offense. *See* H.B. 305, 52nd Leg., 2nd Sess. (N.M. 2016), at 10. Had House Bill 305 been enacted, those convicted of second degree homicide by vehicle, like Defendant, would have been designated per se serious violent offenders under the EMDA and, as a result, would have been eligible to receive only a limited amount of good time credit. Although

---

[4] While the use of draft or proposed legislation has been criticized as an unsuitable tool for interpreting legislative intent, we cite this proposed legislation not to glean meaning from the words actually used by the Legislature, but for the limited purpose of showing the Legislature did not simply forget to amend the EMDA, as the State contends. *See State v. Vest*, 2021-NMSC-020, ¶ 33, 488 P.3d 626 (cautioning "against relying on *draft* versions of bills or *proposed* statutory language in interpreting legislative intent").

this bill passed the House of Representatives, it was never enacted. *See* https://www.nmlegis.gov/Legislation/Legislation?Chamber=H&LegType=B&Leg No=305&year=16 (last visited Jan. 30, 2022) (showing that action on House Bill 305 was postponed indefinitely).

{18} From this legislative history, we do not perceive, as the State surmises, a neglectful Legislature unable to track how an amendment to one statute (Section 66-8-101) might impact another statute (Section 33-2-24). The Legislature instead presumably was aware of the interplay between Section 66-8-101 and the EMDA and introduced legislation to address how homicide by vehicle (DWI) was treated in the EMDA. That the Legislature did not pass this (or similar) legislation does not appear to be a legislative mistake or oversight, but instead appears to be a product of legislative inaction or choice, which, as far as we are aware, provides no basis for departing from clear and unambiguous statutory language. *See generally Clark v. Lovelace Health Sys., Inc.*, 2004-NMCA-119, ¶ 14, 136 N.M. 411, 99 P.3d 232 ("When language in a statute enacted by the [L]egislature is unambiguous, we apply it as written, and any alteration of that language is a matter for the [L]egislature, not for this Court. The decision to extend the scope of an existing statute is a matter for the Legislature[.]" (omission, internal quotation marks, and citations omitted)), *overruled on other grounds by Est. of Brice v. Toyota Motor Corp.*, 2016-NMSC-018, ¶ 42, 373 P.3d 977. Indeed, for the judicial branch to amend a statute by edict,

14

when the legislative branch simply chose not to do so through legislation, plainly would offend basic principles of separation of powers. *See State ex rel. Taylor v. Johnson*, 1998-NMSC-015, ¶ 21, 125 N.M. 343, 961 P.2d 768 (noting, parenthetically, that "the Legislature makes, the executive executes, and the judiciary construes the laws" and "the Legislature possesses the sole power of creating law" (alteration, internal quotation marks, and citation omitted)).

{19} Accordingly, we are in no position to depart from the plain meaning of the EMDA and override what the State might consider to be an absurd policy choice by the Legislature. *See McDonald*, 2004-NMSC-033, ¶ 22 ("We take no position on the [s]tate's policy arguments. It is profoundly a matter for the [L]egislature to determine whether [an offense should be treated as a serious violent offense under the EMDA]."); *see also Bybee v. City of Albuquerque*, 1995-NMCA-061, ¶ 11, 120 N.M. 17, 896 P.2d 1164 (stating that even though a result may seem contradictory, courts presume that the Legislature knows the law and acts rationally). We instead give effect to the plain language of the EMDA and the legislative choice inherent in that language. If second degree homicide by vehicle should be defined as a per se or discretionary serious violent offense under the EMDA, it is the Legislature that must make it so. *See McDonald*, 2004-NMSC-033, ¶ 23. Until then, second degree homicide by vehicle, under Section 66-8-101, is not so defined, and those convicted

of this offense shall be deemed nonviolent offenders under the EMDA. *See McDonald*, 2004-NMSC-033, ¶ 23.

## II.  Defendant's Remaining Claims Lack Support

{20}  Defendant additionally appeals the district court's denial of her motion to withdraw her guilty plea and the district court's decision to grant her less presentence confinement credit than she requested. Defendant, however, acknowledges that the existing record lacks key facts necessary to resolve these claims. We agree that the record is insufficient to resolve these remaining claims and, accordingly, do not address them. Defendant, however, is not precluded from raising her claims in a habeas or other post-conviction proceeding. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 44, 278 P.3d 517 (affirming that a defendant is not precluded from pursuing a claim in habeas where the record is insufficient on appeal); *Martinez v. State*, 1990-NMCA-033, ¶ 2, 110 N.M. 357, 796 P.2d 250 (explaining that a claim the defendant was denied mandatory credits is within the scope of Rule 5-802 NMRA).

## CONCLUSION

{21}  We reverse Defendant's sentence to the extent that it classifies her conviction for second degree homicide by vehicle as a serious violent offense under the EMDA. We remand for the district court to correct Defendant's sentence in accordance with this opinion. We otherwise affirm.

{22}  **IT IS SO ORDERED.**

16

_____
**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Chief Judge**

_____
**JACQUELINE R. MEDINA, Judge**